## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICROSOFT CORPORATION,<br>a Washington Corporation,<br>One Microsoft Way<br>Redmond, Washington 98052-6399,<br><br>        Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY,<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528,<br><br>U.S. BUREAU OF CUSTOMS AND<br>BORDER PROTECTION,<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229,<br><br>JANET NAPOLITANO,<br>U.S. Department of Homeland Security<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528,<br><br>THOMAS S. WINKOWSKI,<br>U.S. Bureau of Customs and Border<br>Protection<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229,<br><br>        Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Plaintiff Microsoft Corporation ("Microsoft"), brings this Complaint against Defendants the Department of Homeland Security; the Honorable Janet Napolitano in her official capacity as Secretary of the Department of Homeland Security; United States Bureau of Customs and Border Protection; the Honorable Thomas S. Winkowski in his official capacity as Deputy Commissioner of the United States Bureau of Customs and Border Protection; and the United States of America (collectively, "Defendants").

1.      Microsoft seeks injunctive and declaratory relief requiring Defendants to comply with a mandatory Limited Exclusion Order ("Exclusion Order") issued by the United States International Trade Commission ("Commission") pursuant to 19 U.S.C. § 1337, that compels Defendants to refuse entry into the United States of Motorola Mobility, Inc. ("Motorola") mobile devices that infringe Microsoft's patent rights.  Defendants have refused to comply with the Exclusion Order and permitted the import of infringing Motorola products in violation of the Exclusion Order.

2.      Defendants' actions are arbitrary, capricious, contrary to law and in excess of statutory jurisdiction, authority, and limitation.  Defendants' unlawful conduct further has caused, and continues to cause, harm to Microsoft justifying immediate and permanent injunctive relief (1) to require Defendants to exclude infringing Motorola products from import into the United States, and (2) to require Defendants to order the redelivery of all products improperly admitted into the United States 30 days prior to the entry of this Court's order compelling compliance with the Exclusion Order.

## NATURE OF THE ACTION

3.      This action seeks to compel Defendants to comply with their mandatory statutory obligation to exclude from import articles that the Commission has determined violate a domestic producer's patent rights under federal law.  *See Certain Mobile Devices, Associated Software, and Components Thereof,* Inv. No. 337-TA-744, 2012 ITC LEXIS 1042 (May 18, 2012) (Final).

4.      As a remedy for that violation of federal law by Motorola, the Commission issued, on May 18, 2012, the Exclusion Order that mandates the exclusion from entry into the United States of Motorola mobile devices that infringe Microsoft's patent rights.  On July 18,

2012, the Exclusion Order became final when the period for Presidential Review concluded

without any action taken by President Obama. Defendants, through the United States Bureau of

Customs and Border Protection ("CBP"), have a mandatory duty to enforce the Commission's

order. Yet, in series of recent actions, CBP has allowed the importation of infringing devices

based on claims that Motorola has made on an *ex parte* basis, and that CBP has accepted without

providing Microsoft notice of those claims, much less an opportunity to address them. Most

egregiously, CBP has allowed Motorola to re-litigate—*in secret*—issues that Motorola lost

before the Commission, and has granted Motorola *precisely the relief that the Commission*

*expressly refused to grant* after full, fair, and open litigation.

5.     Before the Commission, Motorola requested "a transition period" so that it could

continue to import infringing devices while it tried to develop a non-infringing alternative. The

Commission flatly rejected that claim. Yet in April, Motorola persuaded CBP to allow the

importation of infringing Motorola phones until June 1, 2013. CBP provided no written

explanation for granting this transition period, which plainly violated the Exclusion Order.

6.     Similarly, Motorola asked the Commission to limit the Exclusion Order so that it

would not bar importation of phones that provide the infringing calendar function using Google

servers and synchronization components. The Commission rejected that request as well. Yet, on

June 24, 2013 (the "June 24 Ruling"), CBP allowed Motorola to import mobile phones that

provide the calendar function using Google servers and synchronization components. That

decision is also flatly inconsistent with the Commission's ruling and thus equally unlawful.

7.     CBP's claim to the contrary is baseless. CBP noted that Motorola had asked the

Commission to narrow the exclusion order based on the theory that Microsoft had abandoned its

charge that phones that use Google servers infringe Microsoft's patent. According to CBP,

3

because the Commission rejected Motorola's claim as untimely, the Commission made "no finding on this issue and instead took no position."

8.     CBP is wrong. The Commission *did* take a "position"—it ruled that Motorola had waived its "abandonment" claim, and that the Exclusion Order would *not* be narrowed to permit importation of phones that use Google servers. By allowing Motorola to import those very same phones, CBP has violated the Exclusion Order .

9.     That violation, moreover, rests on other clear legal errors. Motorola indisputably bears the burden of proving that any "re-designed" products avoid infringement. Yet CBP announced, without citation to any authority, that it would allow the importation of phones that use Google servers and components because *Microsoft* had failed to disprove Motorola's claim of abandonment—a claim the Commission had rejected as waived. CBP then applied an improper test in determining whether Microsoft had abandoned its accusation of Google servers and components.

10.     Nor did CBP provide Microsoft fair notice that it would be required to shoulder this (legally improper) burden. Indeed, the June 24 Ruling reflects a complete administrative bait-and-switch. CBP decided in April that Motorola's re-designed phones did not infringe because they no longer performed the step of generating email meeting requests. Microsoft showed that CBP had been led astray:  although Motorola had disabled its phones' ability to generate some of such requests using Microsoft Exchange servers, they still generated all such requests using Google servers. That showing refuted the basis of CBP's decision.

11.     The June 24 Ruling nevertheless allows the continued importation of these phones based on a new theory—*i.e.*, that Microsoft failed to prove that it had not abandoned its claim that use of Google servers infringes *a different element of the patent*. By sustaining its April

4

decision on a theory it had not previously mentioned, and without advising Microsoft that it bore

the burden of disproving that theory, CBP violated the basic requirement of fair notice.

12.     Finally, CBP violated another bedrock norm of administrative law by ignoring

relevant evidence in deciding whether Microsoft had abandoned its allegation of infringement by

phones that use Google servers and synchronization components.

13.     CBP has repeatedly allowed Motorola to evade the Commission's Exclusion

Order based on secret presentations that CBP has refused to share with Microsoft.  Microsoft has

repeatedly explained that CBP's stated reasons for not enforcing the Exclusion Order are legally

mistaken, only to confront new theories and claims that CBP has adopted (apparently after

further secret discussions) to justify its continuing refusal to enforce the Exclusion Order.

14.     Microsoft has suffered, and will continue to suffer, irreparable harm from the loss

of its statutory right to prevent the importation of infringing devices.  Defendants cannot remedy

that harm because they are immune from damages and can recall infringing products only for a

period of 30 days after entry.  Likewise, the balance of equities and public interest support

immediate relief, as Defendants' have no legitimate interest in ignoring their legal obligations

and the public will benefit from their compliance with those duties.

15.     Pursuant to 5 U.S.C. §§ 701-706, Microsoft seeks an injunction to (1) compel

Defendants, through CBP, to comply with their obligations under the Exclusion Order; (2) a

declaration that Defendants, through CBP, may not grant Motorola any "transition" or "grace"

period in violation of the Exclusion Order; (3) compel Defendants, through CBP, to mandate the

redelivery of all prior imports of Motorola products that should have been excluded under the

Exclusion Order; and (4) enjoin CBP from allowing importation of any "redesigned" Motorola

products, which prior Commission rulings dictate are subject to the Exclusion Order.

16.     Microsoft further seeks a judgment declaring that the refusal by Defendants, through CBP, to exclude or to order the redelivery of the infringing Motorola Products from the United States (1) was contrary to law, (2) was in excess of their statutory jurisdiction, authority, and/or limitations; and (3) was arbitrary and capricious.

## THE PARTIES

17.     Plaintiff Microsoft Corporation is a corporation organized and existing under the laws of the State of Washington, with a place of business at One Microsoft Way, Redmond, Washington  98052-6399.

18.     Defendant United States Department of Homeland Security, which has its principal office at 245 Murray Lane, S.W., Washington, D.C. 20528, is a federal agency headquartered in the District of Columbia.

19.     Defendant Janet Napolitano is the Secretary of the Department of Homeland Security, and is sued here in her official capacity.[1]  As Secretary, Ms. Napolitano has ultimate responsibility for the activities of the Department, including those actions complained of herein. Secretary Napolitano and her officers are responsible for refusing importation of articles into the United States that are subject to the Exclusion Order.  Secretary Napolitano maintains an office at 245 Murray Lane, S.W., Washington, D.C. 20528.

20.     Defendant United States Bureau of Customs and Border Protection is within the Department of Homeland Security, organized pursuant to the Homeland Security Act of 2002, 6

---

[1] Title 5, Section 702 of the United States Code provides that "the United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." 5 U.S.C. § 702.

U.S.C. § 101, *et seq.* ("HSA Act"). The Bureau of Customs and Border Protection was created

by the Homeland Security Act. Pub. L. 107-296. The HSA Act transferred the "functions,

personnel, assets, and liabilities of . . . the United States Customs Service of the Department of

the Treasury, including the functions of the Secretary of the Treasury relating thereto," to the

Secretary of Homeland Security. *See* 6 U.S.C. § 203. CBP is responsible for the exclusion of

imported products that infringe United States patents and the enforcement of exclusion orders

issued by the Commission. CBP is headquartered in the District of Columbia, and has its

principal office at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

21.    Defendant Thomas S. Winkowski is the Acting Commissioner of the United

States Bureau of Customs and Border Protection, and is sued in his official capacity as an officer

of the Secretary of the Department of Homeland Security. As Acting Commissioner, Mr.

Winkowski is responsible for the activities of CBP, including the actions complained of herein.

Mr. Winkowski maintains an office at 1300 Pennsylvania Avenue, N.W., Washington, D.C.

20229.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28

U.S.C. § 1337.

23.    This Court has the authority to grant the relief requested by Microsoft under the

Administrative Procedure Act, 5 U.S.C. §§ 701-706, under 19 U.S.C. § 1337, and under 28

U.S.C. §§ 2201-2202.

24.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because at

least one defendant in this action resides in this judicial district, and because a substantial part of

the events giving rise to Microsoft's claims occurred in this judicial district.

## BACKGROUND

**I.    Legal Standards Governing Exclusion Of Infringing Articles From The United States And Their Redelivery To CBP After Improper Admission.**

25.    Congress authorized the Commission to adjudicate claims that imports infringe United States patents.

26.    The Commission has authority to investigate and remedy, among other things, "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that . . . infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1).  In such investigations, the Commission must determine "whether or not there is a violation of this section." *Id.* § 1337(c).

27.    If the Commission finds a violation, it "shall direct that the articles concerned . . . be excluded from entry into the United States" and "notify the Secretary [of the Treasury] of its" action.  *Id.* § 1337(d)(1).  "[U]pon receipt of such notice, the Secretary of the Treasury *shall, through the proper officers, refuse such entry.*" *Id.* (emphasis added).

28.    Congress afforded the President 60 days to review a Commission determination, *id.*, which becomes final "on the day after the close of the [Presidential review] period or the day of the notification [of the President's approval of the determination], whichever is earlier." 19 C.F.R. § 12.39(a).

29.    Once an exclusion order is final, CBP is required to exclude infringing products. *See* 19 U.S.C. § 1337(j)(3), (4); *accord* 19 C.F.R. § 12.39(b)(2) ("On or after the date that the Commission's determination of a violation of section 337 [§ 1337] becomes final, as set forth in paragraph (a) of this section, articles covered by the determination will be refused entry.").

30.     Neither the Secretary, nor her "proper officers," has discretion to allow entry of articles when the Commission has directed that they "be excluded from entry into the United States." 19 U.S.C. § 1337(d)(1).

31.     Governing regulations also require that CBP, through its officers, recall imported products that are not entitled to admission into the commerce of the United States. 19 C.F.R. § 141.113(d).  Specifically, Section 141.113(d) imposes a mandatory recall duty:  "If at any time after entry the port director finds that any merchandise contained in an importation is not entitled to admission into the commerce of the United States for any reason . . . *he shall promptly demand the return to CBP custody of any such merchandise which has been released.*"  *Id.* (emphasis added).  Recall extends to products imported within 30 days of the recall.  *Id.* § 113.62 ("no later than 30 days").

## II.     Microsoft's Innovation And Licensing Of Synchronization For Mobile Devices.

32.     Over the past three decades, Microsoft has invested billions of dollars for research and development of operating systems, both in the traditional personal computer setting and in the mobile computing environment.  Microsoft seeks to protect that investment by patenting the technology it develops.

33.     This suit involves one such patent, U.S. Patent No. 6,370,566 (the "'566 Patent") which relates to synchronization in "mobile devices," such as smartphones and tablets.  The patent claims a mobile device with an application that allows a user (1) to schedule an event in his or her calendar (such as a teleconference), (2) synchronize that device with another device (such as a desktop computer), and (3) to generate scheduling requests (such as an email request to schedule a meeting on another person's calendar).

34.     Prior to Microsoft's patented invention, Motorola attempted to develop a mobile device with such synchronization functionality but failed.  Motorola's device was unable to synchronize its calendar, or develop the synchronization reflected in Microsoft's '566 Patent.

35.     Rather than exclude others from using its patented technology, Microsoft has licensed use of the '566 patent under defined circumstances to the majority of the industry's leading smartphone manufacturers, including Nokia, Apple, Samsung, Research In Motion, HTC, AsusTek, Kyocera, Pantech, and Sony.

36.     Like these other manufacturers, Motorola did not develop its own synchronization technology, but instead licensed Microsoft's.  In 2003, Motorola and Microsoft entered a license to Microsoft's synchronization technology, which included the '566 Patent.  While a licensee, Motorola received Microsoft's proprietary design documents, and implemented Microsoft's patented synchronization technology.

37.     After that license expired in 2007, Microsoft and Motorola engaged in negotiations over a renewal license.  Motorola refused to execute the agreement.  Nevertheless, it continued to use Microsoft's patented synchronization despite expiration of the license.

**III.   Proceedings Before The International Trade Commission.**

38.     In response to Motorola's conduct, on October 1, 2010, Microsoft brought suit in the Commission for, among other things, Motorola's infringing use of the '566 Patent's synchronization technology.

39.     Microsoft broadly asserted that the calendar application on Motorola's devices infringed four claims of the '566 Patent, and did so regardless of whether that application was configured to communicate with Microsoft Exchange servers or Google servers.

40.     Specifically, Microsoft included, as an exhibit to its complaint, a "claim chart" that recited each element of the asserted claims of the '566 patent and explained how Motorola's devices satisfied each element.  With respect to one such element, known as the "synchronization component" element (or "element (d)"), Microsoft alleged that Motorola's devices infringed element (d) because they had "Synchronization Support for Corporate calendar, email and contacts (Exchange 2003 and 2007), Google contacts, calendar and Gmail contacts."

41.     Subsequently, Microsoft submitted an expert report, which included an updated claims chart and supporting evidence.  The updated claims chart that did not abandon Microsoft's accusation infringement based on devices using Google servers and synchronization components to provide the calendar function.  Faced with allegations that its devices infringed the synchronization component if they used *either* Exchange *or Google* servers and protocols, Motorola could have argued that the '566 patent does not cover devices that provide the calendar applications using Google servers.  Instead, on August 24, 2011, Motorola conceded without qualification that its products infringed the '566 Patent.

42.     On December 20, 2011, the Administrative Law Judge ("ALJ") issued his final Initial Determination ("ID") on Violation of Section 337 and Recommended Determination on Remedy and Bond.  The ALJ concluded that "a violation of section 337 [19 U.S.C. 1337] of the Tariff Act of 1930 . . . has occurred in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain mobile devices, associated software and components thereof by reason of infringement of one or more claims 1, 2, 5 and 6 of U.S. Patent No. 6,370,566 ['566 Patent] . . . ."  ID at 214.

43.     The ALJ explained that Microsoft's "'566 Patent generally discloses and claims a mobile device that provides the user with the ability to schedule a meeting request from the mobile device itself." ID at 5.

44.     Microsoft asserted that "all of the Motorola Blur Devices, . . . the Google Experience Devices, . . . *and any alternative designs* infringe claims 1, 2, 5 and 6 of the '566 Patent." ID at 65 (emphasis added).  Motorola did "not dispute infringement of the '566 Patent." *Id.*

45.     After confirming the validity of the '566 Patent, *e.g.*, ID at 103, and determining that Microsoft's products constituted a domestic industry relating to the '566 Patent, *e.g.*, ID at 192, the ALJ recommended that "a limited exclusion order be issued." ID at 216.

46.     In its petition for review, Motorola did not request review of any aspect of the ALJ's infringement decision, choosing instead to focus on the validity of the '566 patent.

47.     The Commission decided to review certain aspects of the ALJ's final ID, but not his conclusion that "[t]he accused products do literally infringe the asserted claims of the '566 patent." *Certain Mobile Devices, Associated Software, and Components Thereof*, Inv. No. 337-TA-744, USTIC, at 3-5 (June 5, 2012) ("Comm'n Op.").  The Commission requested briefing on "issues of remedy, the public interest, and bonding from the parties as well as from the public." *Id.* at 5.

48.     The Commission concluded that "an LEO [limited exclusion order] should issue directed to the accused products of 'Motorola or any of its affiliated companies, parents, subsidiaries, licensees, or other related business entities, or their successors or assigns.'" Comm'n Op. at 20.

49.     Before it issued the Exclusion Order, the Commission explicitly rejected Motorola's request that it be allowed to continue importation during a "transition period so that Motorola can implement and introduce devices that use a design-around," Comm'n Op. at 22. Explaining "that a transition period is not warranted as unsupported by the facts and evidence in this investigation," *id.* at 23, the Commission expressly "decline[d] to provide for a transition period in the LEO [limited exclusion order]." *Id.* at 24.

50.     Before it issued the Exclusion Order, the Commission also addressed Motorola's request to limit the scope of the Exclusion Order so that it would "not extend to the accused products' use of Google's servers and Google's synchronization protocol to synchronize calendar objects." Comm'n Op. at 24 n.12. Motorola claimed that such a carve-out was necessary because Microsoft had allegedly abandoned reliance on Google servers and protocols at the hearing before the ALJ. Motorola raised this issue for the first time in its responsive brief, when Microsoft had no chance to show that the claim was groundless.

51.     The Commission rejected Motorola's request to limit the scope of the Exclusion Order, ruling that it was untimely. The Commission thus broadly excluded Motorola's accused products, including those that provide the calendar function using Google servers. Comm'n Op. at 24 n.12.

52.     The Commission likewise found that an Exclusion Order would not be contrary to the public interest, Comm'n Op. at 26 (citing public interest factors under 19 U.S.C. § 1337(d)(1)), noting that Motorola made "no argument that public interest factors weigh against any remedy," *id.*

53.     After reviewing submissions by Google and the Association for Competitive Technology, the Commission ruled that "excluding the infringing Motorola devices will not have

a significant negative impact on competitive conditions in the United States economy," on "U.S. consumers," or "on the public health, safety, or welfare." Comm'n Op. at 31.

54.    Finally, the Commission ordered that Motorola secure a bond "during the 60-day period of Presidential review." Comm'n Op. at 33, 36.

## IV.    The Commission's Limited Exclusion Order.

55.    On May 18, 2012, the Commission issued a Limited Exclusion Order, which was thereafter "serve[d] . . . upon," among others, CBP. *Certain Mobile Devices, Associated Software, and Components Thereof*, Inv. No. 337-TA-744, USTIC, at 3, ¶¶ 5, 6 (May 18, 2012) (Limited Exclusion Order) ("Exclusion Order").

56.    The Exclusion Order mandates that "[m]obile devices, associated software and components thereof covered by claims 1, 2, 5, or 6 of United States Patent No. ['566] that are manufactured abroad by or on behalf of, or imported by or on behalf of [Motorola] or any of its affiliated companies, parents, subsidiaries, successors, assigns, or other related business entities, *are excluded* from entry for consumption into the United States, entry for consumption from a foreign trade zone, or withdrawal from a warehouse for consumption, for the remaining term of the patent, except under license of the patents owner or as provided by law." Exclusion Order at 2, ¶ 1 (emphasis added).

57.    The order became final on July 18, 2012, when the Presidential review period expired. Since that date, entry of unlicensed infringing products has been prohibited, and CBP has been under a mandatory duty to enforce that prohibition.

**V.      Defendants' Refusal To Comply With The Commission's Exclusion Order.**

**A.      Motorola's Continued Importation of Infringing Products.**

58.      Months after the Exclusion Order went into effect, Microsoft learned that infringing Motorola phones continued to be available in the United States.  Microsoft contacted Motorola, which stated that it was continuing to import phones that used software from a company that allegedly had a license to use Microsoft's '566 Patent.  Microsoft disagreed with this claim, but to remove any doubt, it terminated the license on December 1, 2012, and two days later informed CBP of this action.

59.      On January 11, 2013, CBP responded that it would exclude the devices.

**B.      Defendants' Refusal To Exclude Infringing Products.**

60.      Despite CBP's statement, CBP continued to allow Motorola to import infringing products.  In March and April 2013, after monitoring the United States market for Motorola's infringing products, Microsoft expressed concern to CBP that Motorola was continuing to import infringing products, all manufactured overseas.

61.      In late April 2013, CBP informed Microsoft for the first time that Motorola had requested, in *ex parte* meetings, a transition period during which it could continue to import its infringing Emtrace-supported devices.

62.      CBP previously had told Microsoft that it would not provide such a transition period.  Yet after providing that assurance, CBP changed its position without prior notice to Microsoft and granted Motorola the requested transition period.

63.      CBP permitted the importation of phones that it agreed infringed, and despite the Commission's express refusal to grant Motorola a similar grace period ten months earlier.

15

64.     Microsoft learned of this decision at a meeting on May 1, 2013. At this same meeting, CBP also informed Microsoft that Motorola had shown CBP one or more redesigned products that Motorola claimed was non-infringing. CBP did not share any information with Microsoft about the scope of the redesign or the length of time Motorola's redesign request had been pending.

65.     At that meeting, Microsoft suggested an open process whereby Motorola would inform Microsoft about the scope of its proposed redesign, and then both parties would make presentations to CBP about whether Motorola's redesign infringes. Microsoft requested that CBP exclude Motorola's phones until and unless it made this determination. At the meeting, CBP represented to Microsoft that it had not yet decided whether Motorola's redesign was non-infringing. Microsoft urged CBP to exclude Motorola's phones until and unless it made this determination.

66.     During this meeting, CBP failed to inform Microsoft that it had already issued a written ruling that addressed Motorola's re-design of its calendar function in a different phone. On April 25, 2013, CBP had ruled that a "re-design" of the calendar function that Motorola had submitted on May 25, 2012 was not infringing. Microsoft did not learn of the ruling, however, until May 3, 2013, when CBP emailed a copy to Microsoft's counsel. The April 25 Ruling came as a complete surprise to Microsoft as CBP had not informed Microsoft that Motorola had submitted a re-design in 2012 and had not given Microsoft any opportunity to explain why the re-design did not cure Motorola's infringement.

67.     Based on Motorola's *ex parte* submissions, the April 25 Ruling concluded that Motorola met its burden of showing that the "redesigned" products do not satisfy one of the six elements of claim 1 of the '566 Patent, which CBP labeled "element (f)." Element (f) requires

that the calendar application program on the mobile device be capable of "generat[ing] . . . an electronic mail scheduling request object," such as an email meeting request.  CBP concluded that the "redesigned" devices did not satisfy element (f) because Motorola had "removed the ability to edit meeting requests when using the Exchange ActiveSync protocols on the redesigned products."  Customs and Border Protection, HQ H226615, at 7 (Apr. 25, 2013) ("April 25 Ruling").

68.   The products' asserted inability to generate email meeting requests was the sole basis for CBP's decision.

69.   After meeting with CBP on May 6 and 7, 2013, to explain why the April 25 Ruling was wrong, Microsoft submitted a letter on May 10, 2013 detailing the errors of the April 25 Ruling and seeking its revocation.  Microsoft demonstrated that Motorola's devices still infringed element (f) because they still had a calendar application that generated email meeting requests.  Motorola had disabled its devices' ability to generate some email meeting requests through Microsoft Exchange servers, but the devices still could generate the required email meeting requests through Google servers.

70.   CBP and Microsoft again met on May 16, 2013, and Microsoft reiterated its request that CBP conduct an open and transparent process to evaluate whether Motorola's imports violated the Exclusion Order.  CBP again refused that request.  CBP stated that it would make every effort to rule on Microsoft's revocation request by June 1, 2013 (the close of CBP's unilateral transition period), but no later than June 7, 2013.

**C.   The June 24 Ruling.**

71.   On June 24, 2013, CBP issued a ruling that rejected Microsoft's revocation request.  Customs and Border Protection, HQ H242025 (Jun. 24, 2013) ("June 24 Ruling").

72.    CBP's June 24 Ruling nowhere disputes Microsoft's showing that, contrary to the central premise of the April 25 Ruling, Motorola's "redesigned" products infringe element (f) of claim 1 because they still generate email meeting requests.

73.    Instead, the June 24 Ruling treated Microsoft's refutation of CBP's prior reasoning as, "in essence," a "new ruling request" to exclude the devices on a basis that CBP "did not [previously] address," June 24 Ruling at 2—namely, that the Motorola devices' use of Google servers and protocols infringe a different element of claim 1 (the so-called "synchronization component" element, or "element (d)")", *id.* at 6.

74.    CBP acknowledged that Microsoft's complaint before the Commission had expressly accused devices using Google servers of infringing this element.  CBP, however, repeated Motorola's argument that Microsoft had abandoned this claim—citing the same brief in which Motorola had made the same argument that the Commission had rejected.

75.    CBP then placed the burden on Microsoft to disprove Motorola's previously rejected "abandonment" theory, stating that CBP "will not refuse entry on the basis of features that were present on the accused devices at the time of the ITC investigation but were not specifically accused and found to satisfy the limitations in the exclusion order." June 24 Ruling at 9.

76.    CBP dismissed the Commission's refusal to narrow the Exclusion Order to permit importation of Motorola devices that used Google servers and protocols.  Because the Commission had rejected Motorola's abandonment claim as untimely, CBP stated that the Commission had made "no finding on this issue and instead took no position." June 24 Ruling at 7. According to CBP, the Commission's refusal to consider that request as untimely *"seems to imply* that the use of Google servers and synchronization component was not specifically

18

accused, or at the very least that the record is unclear, because if it had been specifically accused, the [Commission] would have expressly denied Motorola's assertion as having been subject to the concession [Motorola] made." June 24 Ruling at 10.

77. CBP also acknowledged that Microsoft had continued, before the Commission, to accuse devices configured with Google servers of infringement. CBP nevertheless concluded that Microsoft had failed to prove that it had not abandoned that accusation prior to the time Motorola conceded infringement. CBP based that conclusion on its view that "the record was unclear," that Microsoft had allegedly failed to "clarif[y] where in the record" it had accused Google servers, and because certain evidence (according to CBP) "seem[ed] to counter" Microsoft's claim. *Id.* at 9-10.

78. As part of its review, however, CBP ignored parts of the record that were inconsistent with its conclusion.

**Defendants' Actions Are Subject To Challenge Under The Administrative Procedure Act**

79. CBP's failure to exclude infringing Motorola products from the United States and failure to recall such Motorola products already imported into the United States within its temporal reach constitute agency actions under 5 U.S.C. § 551(13).

80. A plaintiff "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," except to the extent that "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. §§ 701-702.

81. No statute precludes judicial review of CBP's failure to enforce the Exclusion Order. Nor is enforcement of the Exclusion Order agency action committed to CBP's discretion

by law.  Rather, CBP's enforcement of the Exclusion Order is a statutory imperative under 19

U.S.C. § 1337(d)(1) and 19 C.F.R. § 12.39(b)(2).

82.    CBP's grant to Motorola of a transition period until June 1, 2013 is final agency

action because it is not of a tentative or interlocutory nature and has direct and appreciable legal

consequences.

83.    The April 25 Ruling and June 24 Ruling are final agency actions because they

"represen[t] the official position of the Customs Service with respect to the particular transaction

or issue described therein and is binding on all Customs Service personnel in accordance with

the provisions of this section until modified or revoked."  19 C.F.R. § 177.9(a).

84.    No statute precludes judicial review of CBP's failure to recall products excluded

by the Exclusion Order that CBP has allowed into the commerce of the United States.  CBP's

recall of such products is mandated by 19 C.F.R. § 141.113.

85.    CBP's refusal to order redelivery is final agency action predicated on CBP's grant

of a transition period and its April 25 Ruling and June 24 Ruling.

86.    Under 5 U.S.C. § 706, a "reviewing court shall—(1) compel agency action

unlawfully withheld or unreasonably delayed and (2) hold unlawful and set aside agency action,

findings, and conclusions found to be, *inter alia*, (A) arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law; . . . [or] (C) in excess of statutory jurisdiction, authority,

or limitations, or short of statutory right."

87.    CBP's failure to enforce the Exclusion Order is arbitrary and capricious,  not in

accordance with the law, and is in excess of statutory jurisdiction, authority, and limitation.

20

## CLAIMS FOR RELIEF

### COUNT I
### (April 25 and June 24 Rulings)
### COMPELLING DEFENDANTS
### TO ENFORCE THE COMMISSION'S EXCLUSION ORDER
### (5 U.S.C. §§ 701-706 and 19 U.S.C. § 1337)

88.     Microsoft incorporates by reference the allegations set forth in the prior paragraphs above, as if fully set forth herein.

89.     CBP's determination, in its April 25 and June 24 Rulings, that certain Motorola products fall outside the scope of the Exclusion Order is contrary to law, including specifically the Commission's refusal to narrow the Exclusion Order to permit importation of Motorola mobile devices that provide a calendar function using Google servers and protocols.

90.     Defendants' refusal, through CBP, to enforce the Exclusion Order based on its April 25 and June 24 Rulings is final agency action that has resulted in irreparable harm to Microsoft.

91.     Microsoft has exhausted all of its available administrative remedies and/or pursuit of any further administrative remedies is futile.

92.     Microsoft is entitled to challenge CBP's failure to enforce the Exclusion Order through the April 25 and June 24 Rulings and to demand enforcement of the Exclusion Order pursuant to 5 U.S.C. §§ 701-706 and 19 U.S.C. § 1337(d)(1).

93.     Defendants' actions, through CBP, are not in accordance with the law and in excess of Defendants' statutory jurisdiction, authority, and limitation.

94.     CBP's failure to enforce the Exclusion Order improperly through the April 25 and June 24 Rulings allows importation of infringing Motorola devices up to and including the present.

95.     Microsoft is legally entitled to immediate exclusion from the United States of the infringing Motorola devices.

## COUNT II
### (April 25 and June 24 Rulings)
### SETTING ASIDE ARBITRARY AND CAPRICIOUS AGENCY ACTION
### (5 U.S.C. §§ 701-706 and 19 U.S.C. § 1337)

96.     Microsoft incorporates by reference the allegations set forth in the prior paragraphs above, as if fully set forth herein.

97.     Defendants' conclusion, through CBP, that the Commission's Exclusion Order does not cover Motorola mobile devices that provide a calendar function using Google servers and protocols is not in accordance with law, in excess of Defendants' legal authority, arbitrary, capricious, and not the product of reasoned decisionmaking.

98.     Defendants, through CBP, committed legal error, and acted arbitrarily and capriciously by misallocating the burden of proof and requiring Microsoft to prove that Motorola devices that provide a calendar function using Google servers and protocols are subject to exclusion under the Commission's Exclusion Order.

99.     Defendants, through CBP, violated elementary fair notice requirements and acted arbitrarily and capriciously by failing to provide adequate notice that Microsoft would be required to prove that Motorola devices that provide a calendar function using Google servers and protocols are subject to exclusion under the Commission's Exclusion Order.

100.     Defendants, through CBP, acted arbitrarily and capriciously by ignoring or failing to address evidence that Microsoft did not abandon its claim that Motorola devices that synchronize calendar events using Google servers and protocols infringe Microsoft's '566 Patent.

22

101. Defendants, through CBP, issued the April 25 Ruling based upon *ex parte* contacts with Motorola without giving Microsoft notice or an opportunity to explain that the relief sought by Motorola had been rejected previously.

102. Microsoft has exhausted all of its available administrative remedies and/or pursuit of any further administrative remedies is futile.

103. CBP's April 25 and June 24 Rulings should be vacated and set aside as arbitrary and capricious.

## COUNT III
### (Transition Period)
## DECLARATION THAT TRANSITION PERIOD VIOLATES THE COMMISSION'S EXCLUSION ORDER
### (5 U.S.C. §§ 701-706 and 19 U.S.C. § 1337)

104. Microsoft incorporates by reference the allegations set forth in the prior paragraphs above, as if fully set forth herein.

105. Defendants' grant, through CBP, of a "transition" period during which Motorola may import unlicensed and infringing products is contrary to 19 U.S.C. § 1337, the Exclusion Order, and the Commission's Opinion.

106. Defendants' grant of a "transition period" to Motorola is final agency actions that has resulted in irreparable harm to Microsoft.

107. Based on CBP's conduct, including its *ex parte* discussions with Motorola and its decisions, and changes of position, without prior notice, Microsoft has a reasonable fear that CBP will consider, and grant, additional grace periods to Motorola without prior notice to Microsoft.

108. Microsoft has exhausted all of its available administrative remedies and/or pursuit of any further administrative remedies would be futile.

23

109.    Microsoft is entitled to a declaration that the grant of a transition period violates

the Exclusion Order pursuant to 5 U.S.C. §§ 701-706 and 19 U.S.C. § 1337(d)(1).

## COUNT IV

### DECLARATORY JUDGMENT THAT DEFENDANTS' ACTIONS ARE ARBITRARY AND CAPRICIOUS, CONTRARY TO LAW AND  EXCEED THEIR STATUTORY AUTHORITY
### (5 U.S.C. § 706; 28 U.S.C. § 2201)

110.    Microsoft incorporates by reference the allegations set forth in the prior

paragraphs above, as if fully set forth herein.

111.    CBP's failure to refuse entry of the infringing Motorola products into the United

States contravenes the express statutory mandate set forth in 19 U.S.C. § 1337(d)(1) and the

governing law established by the Commission's rulings and Exclusion Order.

112.    Pursuant to 5 U.S.C. § 706(2) and 28 U.S.C. §2201, Microsoft therefore seeks a

declaratory judgment that CBP's refusal to enforce the Exclusion Order is arbitrary and

capricious, contrary to law and "in excess of statutory jurisdiction, authority, or limitations."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Issue an Order granting injunctive relief in favor of Microsoft and against Defendants that:

    i. compels Defendants to exclude infringing Motorola products from entry into the United States immediately;

    ii. bars Defendants from allowing importation of any "redesigned" Motorola product that includes a calendar application configured to communicate with either Exchange servers and protocols or Google servers and protocols;

    iii. compels Defendants to recall all infringing Motorola products imported into the United States within Defendants' temporal reach and, if such demand is not complied with, to require Defendants to assess liquidated damages in an amount equal to three times the value of the Motorola products not returned or, in the alternative, at least in an amount equal to the value of the Motorola products not returned;

    iv. compels Defendants to vacate the April 25 Ruling and the June 24 Ruling, and prohibit any rulings that deny Microsoft notice and a meaningful opportunity to protect its rights in the Exclusion Order, and

B.  Grant such other and further relief as the nature of the case may admit or

require, declaratory relief requested above, and any such other relief as may

be deemed just and equitable by this Court.


Dated:  July 12, 2013

Respectfully Submitted,


_____
Joseph R. Guerra (D.C. Bar No. 418532)
Paul J. Zidlicky (D.C. Bar No. 450196)
Brian R. Nester (D.C. Bar No. 460225)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202-736-8000
Facsimile: 202-736-8711

Richard A. Cederoth
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036

*Counsel for Plaintiff Microsoft Corporation*